UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTOR CAMINATA,

        Plaintiff,

                                       File No. 1:14-cv-203

v.

                                       HON. ROBERT HOLMES BELL

COUNTY OF WEXFORD, et al.,

        Defendants.

_____/

## **O P I N I O N**

This action arises from the series of events leading to Plaintiff's arrest and 2009 conviction on arson charges. All charges were dismissed against Plaintiff with prejudice on January 22, 2014, more than five years after Plaintiff was incarcerated. On February 28, 2014, Plaintiff filed a complaint under 42 U.S.C. § 1983 for constitutional violations that resulted from his arrest and conviction. The matter is before the Court on Defendants' motions for summary judgment. (ECF Nos. 64, 66.) Plaintiff filed responses (ECF Nos. 71, 106), to which Defendants filed replies (ECF Nos. 131, 132.) For the reasons that follow, Defendant Jenkinson's motion (ECF No. 64) will be granted, and the remaining Defendants' motion (ECF No. 66) will be denied.

### **I. Background**

#### **A. Investigation, Arrest, and Conviction**

On March 2, 2008, Plaintiff Victor Caminata was at his girlfriend's home with her

three children at 402 W. 32nd Rd., Boon Township, in Wexford County, Michigan, when a fire broke out. Sometime after 11:00 a.m., Plaintiff and his girlfriend's son both noticed smoke. Plaintiff stated that he first went to the basement and did not see fire. He then climbed on the roof and observed flames shooting out of the chimney. (Marquardt Report, ECF No. 66-6, PageID #1570.) Plaintiff threw a "chem stick," a chemical-based chimney fire suppressant, down the chimney. (First Am. Compl. ¶ 14, ECF No. 40.)  Plaintiff called 911 at 11:57 a.m. (*Id.* at ¶ 15.) By the time the fire was extinguished, the roof of the house had collapsed, destroying the home. (*Id.* at ¶ 16.)

The home was heated with both a propane fueled, hot water boiler system and a wood-burning stove, which had recently been installed by Plaintiff. (Marquardt Report, ECF No. 66-6, PageID #1569.) Both heating sources were located in the basement. Heat from the boiler system vented through a metal chimney pipe located in the basement, which was enclosed by a wood chimney chase that extended vertically from the basement  through the roof. (*Id.*) The home also had a masonry block chimney that vented the heat from the wood stove. On the ground floor, the masonry block chimney was enclosed by the walls in the house. The inside of the walls had wood framing. The masonry block chimney's thimble hole was located about five feet off of the ground on the first floor.

Sergeant Brian Rood of the Wexford County Sheriff's Department was the first to arrive on the scene. Rood examined the house and took photographs. (Rood Dep. at 45.) Rood observed that the masonry block chimney's thimble hole was not covered by the wood

2

frame of the wall, and stated that the photographs that he took would have shown this.

Two days later, on March 4, 2008, Michigan State Police Sergeant Michael Jenkinson, a certified fire investigator, was called to investigate the "suspicious house fire." (Jenkinson March 4 Report, ECF No. 65-8, PageID #887.) Jenkinson observed that the "wood structure" around the masonry chimney was lying on the floor. (*Id.* at PageID #892.) Jenkinson reconstructed the wood and found that the thimble hole would have been covered. He noted that the wood board originally covering the thimble hole was not damaged by fire and therefore determined that it was unlikely that the fire escaped through the thimble hole of the masonry block chimney. (*Id.* at PageID #893.) While Jenkinson did not arrive at a conclusion, he noted that "it is my opinion that this is not a chimney fire as reported by the occupant. Human involvement in this fire cannot be eliminated." (*Id.* at PageID #894.)

Following Jenkinson's initial investigation, a Michigan State Police Trooper received an anonymous tip that Plaintiff intentionally set the fire. Jenkinson and James Raad of Nederveld Investigations returned to the scene on March 18, 2008, to conduct further investigation. (Jenkinson Supplemental Report, ECF No. 94-2, PageID #2340.) Jenkinson noted "two small pockets of heavy, unconnected burning" on the floor joists in the basement that supported the living room floor and surrounded the chimney area. Jenkinson noted that "[t]hese deep isolated pockets of burning certainly have the appearance, and are consistent with a heavy, direct flame source having been applied, similar to that of a propane torch." (*Id.* at PageID #2340.) Jenkinson spoke with Plaintiff's girlfriend's stepfather, who suspected

3

the fire was not an accident. Jenkinson also noted that while Plaintiff had stated that he lit the wood stove between 5:30 and 6:30 am on the day of the fire, "[w]ith the lack of burning to the wood, it is absolutely impossible for that wood to have been burning for roughly 5 to 6 hours." (*Id.* at PageID #2341.) On March 19, 2008, Raad told Jenkinson that an electrical engineer had ruled out faulty wiring as the cause of the fire. Given all of these factors, on March 26, 2008, Jenkinson filed a supplementary incident report, which concluded that the cause of the fire was arson.

A criminal jury trial occurred in 2009. Sergeant Rood believes about two rolls of film that he took depicting the scene of the fire were not produced by the State at this jury trial. (Rood Dep. at 22, ECF No. 73-1.) Rood testified that he believes that he took three or four rolls of film, put the film in a manila envelope, and placed the envelope in the detective bureau's mailbox slot. (*Id.* at 17-18.) Only about two rolls of film were produced. Defendant Trent Taylor of the Wexford County Sheriff's Department was the officer in charge of Plaintiff's case. Taylor stated that it was customary for a secretary to take photos to the Walmart in Cadillac to be developed. (Taylor Dep. at 42-43, ECF No. 111-1.) Taylor also stated that there is no record of how many rolls of film Rood provided to Taylor or how many rolls Taylor provided to the prosecutor. (*Id.* at 44-46.) Taylor stated, however, that he turned over all of the pictures he had received to the prosecutor. (*Id.* 53.) The Wexford County Prosecutor, Julie Valice, testified that she turned over all of the photographs that she received from the Wexford County Sheriff's Department to the defense, and that if certain

photographs were not turned over, it was because she did not receive them from the Wexford County Sheriff's Department. (Valice Dep. at 30, 33, ECF No. 114-1.)

On May 14, 2009, after the jury trial, Plaintiff was convicted of arson of a dwelling house, Mich. Comp. Laws § 750.72. On July 8, 2009, Plaintiff was sentenced to serve between 9 and 40 years in prison. The Michigan Court of Appeals affirmed the conviction on October 21, 2010. *People v. Caminata*, Docket No. 293220, 2010 WL 4138404 (Mich. Ct. App. 2010). The Michigan Supreme Court denied Plaintiff's application for leave to appeal on February 7, 2011. *People v. Caminata*, 793 N.W.2d 704 (Mich. 2011).

## B. Innocence Clinic Involvement

In 2012, the University of Michigan Innocence Clinic ("Clinic") became involved in this case. The Clinic asserted numerous reasons why Plaintiff was entitled to a new trial, and noted the following deficiencies in the fire investigation:

> [T]he investigators' disorganized inspection and analysis of the fire scene fell woefully short of the scientific, systematic approach that has been standard in the field of fire investigation for more than a decade. Neither Mr. Raad nor Sgt. Jenkinson purported to follow NFPA 921 or even mentioned the document, let alone justified their deviations from it . . . . Sgt. Jenkinson did not adequately reconstruct the wood boards surrounding the chimney, resulting in his erroneous elimination of the chimney as the origin and cause of the fire. The investigators conducted no testing of the intact chimney or furnace despite their claim that the wood in the furnace had been burning a shorter time than [Plaintiff] claimed. Finally, they failed to excavate the floor joists and the chase wood they claimed [Plaintiff] tried to set on fire . . . . Inconsistent with the NFPA 921 and the scientific method, the two investigators never identified the area in the chase where they believed this torch actually ignited anything. They also unscientifically speculated about the burning characteristics of the wood . . . . The investigators failed to test for any competent ignition sources, yet maintained it was arson, in violation of professional standards. They

5

employed the negative corpus standard, meaning they eliminated other possibilities rather than confirming their own hypothesis–a methodology condemned by NFPA 921. The fire-pattern analysis the investigators used also is not scientifically sound. Sgt. Jenkinson and Mr. Raad also failed to properly examine the chimney to assess the likelihood of a chimney fire, another unscientific mistake that falls far below professional standards. In sum, the investigations performed by Sgt. Jenkinson and Mr. Raad were scientifically unsound and representative of under-trained fire investigators who continue to apply antiquated methodology.

(ECF No. 66-4, PageID #1456-57) (internal citations omitted).

After the Clinic's filing, Agent Michael Marquardt, a Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Certified Fire Instructor was asked by the Wexford County Prosecutor's Office to review the 2008 fire investigation. (Marquardt Report, ECF No. 66-6, PageID #1566.) Marquardt reviewed the entire case file including police reports, photographs, and transcripts, and also interviewed Jenkinson. (*Id.* at PageID #1567.) Marquardt stated:

Although the State's investigators may not have explicitly stated in their reports or articulated within their court testimony their use of and adherence to the elements of the scientific method, it is my opinion that their systematic actions at the fire scene, thorough documentation, written reports, and sworn testimony clearly demonstrate an adherence to the elements of that methodology.

(*Id.* at PageID #1572.) After addressing the flaws pointed out by the Clinic, Marquardt concluded that "there is sufficient data (facts, circumstances, information, evidence, etc.) under current fire investigation accepted practices, procedures, and standards to support an incendiary fire cause classification to a reasonable degree of certainty." (*Id.* at PageID #1577.)

6

After Marquardt's initial report, an evidentiary hearing was scheduled for July 2, 2013 on Plaintiff's Motion for Relief from Judgment. (Scott Dep., ECF No. 66-5, PageID #1478.) The night before the hearing, Assistant Attorney General Lauryl Scott was examining the case file and came across a packet containing two developed photographs and a "negative strip" showing undeveloped pictures. (*Id.* at PageID #1502, 1507.) Rood's name was on the packet. (*Id.* at PageID # 1503.) Therefore, that day, Scott, Marquardt, and Rood met at a McDonald's. At this meeting, Rood stated that he believed Jenkinson's board reconstruction was incorrect because the wood was below the thimble hole. (Marquardt Dep. at 100, ECF No. 66-7, PageID #1605.) Rood also told Marquardt that he may have taken more photographs than were contained in the case file. (*Id.* at 101.) "Wexford County conducted a thorough search for the missing photographs and they were not discovered." (Defs.' Mot. Summ. J. at 11, ECF No. 66, PageID #1339.)

Scott requested, but was not granted, an adjournment of the hearing so that the experts could examine the photographs that were discovered. (Scott Dep. at 37, ECF No. 66-7, PageID #1510.) Because the adjournment was not granted, Scott stated that there was not enough time for Marquardt to analyze the photographs and testify under oath that he still believed the fire was incendiary. (*Id.*) Accordingly, Scott stipulated that the motion for relief from judgment be granted, and a date for a new trial was set. (*Id.*)

After reviewing the photographs that Scott came across, Marquardt believed that they bolstered Jenkinson's testimony and was willing to go ahead with the retrial of the case. (*Id.* at PageID#1520.) Marquardt had, however, seen Jenkinson testify poorly in an unrelated

case, and Scott began to worry that Marquardt was "waffling" as to whether they should go forward with a retrial. (*Id*. at PageID #1525.) After taking into account the use of prosecutorial resources, Marquardt's waffling, and other factors, Scott decided to dismiss the case.

## C. Plaintiff's § 1983 Action

On February 28, 2014, Plaintiff filed a complaint under 42 U.S.C. § 1983 for constitutional violations that resulted from his arrest and conviction. Plaintiff asserts five claims. In his first and fourth counts, Plaintiff argues that Defendants Taylor, Rood, and Jenkinson failed to disclose exculpatory evidence to the prosecutor in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (First Am. Compl., ¶ 62(A),(E), ECF No. 40.) In his second, and third counts, Plaintiff argues that Defendants Taylor and Jenkinson[1] "influenced or participated in the initiation of criminal prosecution" by either supplying false information or omitting material information, and that but for this behavior, probable cause would have been lacking. (*Id.* at ¶ 62(B-D).) Plaintiff's fifth count alleges that the County of Wexford "created policies, practices and customs, including a failure to provide adequate training to its police officers . . .." (*Id.* at ¶ 62(F).) Plaintiff argues that these actions caused him to be wrongfully detained without probable cause, charged with crimes he did not commit, wrongfully convicted and imprisoned, and deprived of liberty. (*Id.* at ¶ 64.)

---

[1]A claim was initially brought against Chad Sprik as well, but the parties stipulated to dismiss Sprik with prejudice. (ECF No. 59.)

## II. Standard of Review

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III. *Brady* Claims

Plaintiff asserts that Defendants Jenkinson, Taylor, and Rood deliberately and consciously chose not to disclose material evidence to the prosecutor, violating their constitutional obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant Jenkinson argues that he is entitled to both absolute immunity and qualified immunity, and Defendants Taylor and Rood argue that they are entitled to qualified immunity.

### A. Absolute Immunity

Defendant Jenkinson argues that he is "entitled to absolute immunity for any potential claims that might arise from the testimony he gave at [Plaintiff's] preliminary examination and criminal trial." (Defs.' Mot. Summ. J. at 19, ECF No. 65.) Plaintiff contends that the testimony at the preliminary examination and criminal trial was based off of Jenkinson's pretrial fabrication of evidence and, therefore, absolute immunity does not apply.

"As with any witness, police officers enjoy absolute immunity for any testimony delivered 'at adversarial judicial proceedings.'" *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)). However, "absolute immunity does not 'relate backwards' to 'protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for testimony.' Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence." *Gregory*, 444 F.3d at 738-39 (internal citations omitted).

Here, Plaintiff's complaint alleges that Jenkinson supplied false information and omitted information in his origin and cause findings, and that Jenkinson fabricated his reconstruction of the fire scene. (First Am. Compl. ¶ 62.) While Jenkinson is entitled to absolute immunity for testimony delivered at the adversarial judicial proceedings, the fact that he testified about his origin and cause findings does not provide him with absolute immunity for any *pretrial* fabrications or withholdings of evidence that may have occurred.

## B. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability "if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Government officials are entitled to qualified immunity "unless it is obvious that no reasonably competent official would have concluded that the actions taken were lawful," and the doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Plaintiff has the burden of showing that Defendants are not entitled to qualified immunity. *Id.* at 907 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)). The Sixth Circuit has used a "tripartite" procedure when evaluating qualified immunity claims, looking at: (1) whether, viewing the facts in a light most favorable to the plaintiff, a constitutional violation occurred; (2) whether the right that was violated was a clearly established right that a reasonable person would have known of; and (3) whether the plaintiff

has "alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999).

The Sixth Circuit has found that a police officer's *Brady* obligation to turn over material and exculpatory evidence to the prosecutor was clearly established far before the actions complained of in this case occurred. *See Moldowan*, 578 F.3d at 382 (noting that "any reasonable police officer would know that suppressing exculpatory evidence was a violation of the accused's constitutional rights" as early as 1990). Accordingly, the Court must examine whether the allegations against Defendants Jenkinson, Rood, and Taylor–viewed in a light most favorable to Plaintiff–violated Plaintiff's constitutional rights as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and whether Plaintiff has alleged sufficient facts, supported by evidence, to show that the official's actions were objectively unreasonable.

## C. The *Brady* Standard

To prevail on a *Brady* claim, the claimant has the burden of establishing that: (1) the evidence at issue is favorable to him; (2) such evidence was suppressed; and (3) the suppressed evidence was material. *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). Favorable evidence includes both exculpatory evidence and impeachment evidence. *Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003); *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.'" *Bagley*, 473 U.S. at 682.

In determining whether a reasonable probability of a different outcome exists, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Police officers have obligations derived from *Brady* to turn over exculpatory evidence to the prosecutor. *See  Moldowan*, 578 F.3d at 377-389 (6th Cir. 2009). "But this disclosure obligation is limited; *Brady* requires a police officer to disclose evidence to the prosecutor only when its exculpatory value is 'apparent' to the officer[.]" *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014). Failure to preserve and disclose evidence when its exculpatory value is apparent "constitutes a due process violation, regardless of whether a . . . § 1983 plaintiff can show that the evidence was destroyed or concealed in 'bad faith.'"[2] *Moldowan*, 578 F.3d at 388. "[E]xculpatory value is 'apparent' to the officer . . . when the officer is aware that the evidence 'could form a basis for exonerating the defendant.'" *D'Ambrosio*, 747 F.3d at 389-90 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

## D. The *Brady* Evidence

As a threshold matter, it is important to clarify the precise nature of the exculpatory evidence that Plaintiff is claiming was suppressed. "We evaluate the tendency and force of the undisclosed evidence item by item[.]" *Kyles v. Whitley*, 514 U.S. 419,  436 n.10 (1995).

---

[2]In *D'Ambrosio*, the Sixth Circuit noted that this requirement is the "functional equivalent" of a requirement that the officer act in bad faith, because "an officer's 'destruction or concealment' of obviously exculpatory evidence 'can never be done in good faith and in accord with [the officer's] normal practice[.]" 747 F.3d at 390 (quoting *Moldowan*, 578 F.3d at 389).

### 1. Claims Against Rood and Taylor

Plaintiff alleges that Defendants Taylor and Rood withheld the following exculpatory evidence:

### a. The Rood Photographs

As stated above, prior to a 2013 hearing, Rood met with Marquardt and Scott and indicated that he may have taken more photographs than were contained in the case file. Plaintiff asserts that the missing photographs "clearly contradicted Jenkinson's theory that a board covered the thimble hole at the time of the fire." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 10, ECF No. 106.) Plaintiff asserts that this is *Brady* evidence because it directly impeaches Jenkinson's testimony and skills as a fire investigator. (*Id.* at 4.) For instance, one of the alleged defects with Jenkinson's reconstruction of the wooden frame surrounding the chimney was that he failed to clear the debris on the floor prior to the reconstruction. Therefore, the height of the reconstructed boards was greater than the original height. Rood testified:

> Q: . . . You don't have a photograph that was developed, as we see, that shows from the floor of the first floor to the floor of the second floor–or the ceiling of the first floor, right?
>
> A: Correct.
>
> Q: You would have taken one, obviously?
>
> A: Correct.
>
> Q: Just not developed?
>
> A: Correct.

Q: You don't know whatever happened to it?

A: No, I don't.

Q: Nobody has been able to tell you what happened to it?

A: Correct.

Q: If you had that, we would be able to see exactly what the wood looked like before anything was altered; fair?

A: Correct.

(Rood Dep. at 49-50, ECF No. 107-1.) Rood also testified that he took closeup photos of the thimble hole showing that nothing was covering the hole, and that creosote, a "by-product of combustion of wood burning in a chimney" that can be the cause of chimney fires, was contained in the thimble hole. Rood testified that he turned over all photographs he took. (Rood. Dep. at 17-18, ECF No. 107-1.) Taylor testified that all photographs he had were handed over to the prosecutor. (Taylor Dep. at 55-56, ECF No. 111-1.) It is unclear where the photographs went missing.

### b. The Rood Information

Plaintiff also refers to a meeting that occurred between Rood, Jenkinson, and Taylor on March 18, 2008. Both Rood and Jenkinson deny that Rood told Jenkinson his board reconstruction was flawed. (Rood Dep. at 67, ECF No. 108-1; Jenkinson Dep. at 165, ECF No. 119-1.) Taylor could not recall any conversation regarding Jenkinson's investigation. (Taylor Dep. at 73, ECF No. 112-1.) While Rood indicated that the meeting was short and

15

the details of the respective investigations were not discussed, Jenkinson indicated differently:

> Q: Do you recall having a conversation where–with Sergeant Rood or Taylor where you talked about how, you know, I put these boards up here and there's no way it's a thimble hole fire?
>
> A: I'm sure–I'm sure that we discussed that. You know, the details of when and I– I don't remember. But I would suspect that, yes, it probably was talked about.
>
> ****
>
> Q:And that's why you think you probably discussed it, because you said, wait, there's a piece of wood over this thimble hole, so it couldn't have burned up?
>
> A: Right. I–I'm sure it was discussed. I just don't remember when and at what point.

(Jenkinson Dep. at 164-65, ECF No. 119-1.) Because Rood took photographs that contradicted the validity of Jenkinson's reconstruction, and allegedly handed the photographs over to Taylor, Plaintiff argues that both Rood and Taylor would have known that Jenkinson's reconstruction was flawed when Jenkinson discussed his investigation.

### c. Plaintiff's *Brady* Claims Against Rood and Taylor Survive Summary Judgment

Looking at the evidence in the light most favorable to Plaintiff, Defendants Rood and Taylor failed to disclose evidence when its exculpatory value was "apparent" to them. Jenkinson stated that he probably discussed his board reconstruction with Rood and Taylor. While neither Rood nor Taylor are fire investigation experts, Rood has testified that he took photographs directly contradicting the validity of Jenkinson's board reconstruction, and that

16

he turned those photographs over to his superior, Trent Taylor. While it is unclear exactly where these photographs went missing, that is a question of fact. If Jenkinson did discuss his board reconstruction with Rood and Taylor, a jury could find that Rood was aware that the reconstruction was incorrect, that Taylor was aware that contradictory evidence existed, and that both failed to disclose this evidence while knowing "that the evidence 'could form a basis for exonerating the defendant.'" *D'Ambrosio*, 747 F.3d at 389 (quoting *Youngblood*, 488 U.S. at 58). Because a reasonable jury could find that a clearly established constitutional right was violated, Rood and Taylor are not entitled to qualified immunity.

### 2. Claims Against Jenkinson

#### a. Failure to Disclose Fabrication

Plaintiff first contends that Jenkinson withheld: (1) information that Jenkinson fabricated the board reconstruction in order to rule out the thimble hole as a potential origin of the fire; and (2) evidence that Jenkinson knew that his report of "heavy, unconnected burning" in the basement floor joists was caused by a fire spread from the chimney chase, but still reported otherwise. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 10-11, ECF No. 71.)

Plaintiff's claim that Jenkinson deliberately fabricated evidence is based entirely on Plaintiff's speculation. In his deposition, Jenkinson testified that, in hindsight, he believes he could have done a better investigation, but was adamant that "in no way, shape, or form, was I manipulating any evidence." (Jenkinson Dep. at 234, ECF No. 121-1.) Different fire investigators disagree as to whether the fire investigation was properly conducted. Rood and Plaintiff's expert Joseph Filas both believed that the board reconstruction was incorrect.

(Filas Dep. at 33, ECF No. 98-2.) Marquardt believes Jenkinson followed proper fire investigation practices and procedures. Filas testified that he "did not believe" Jenkinson's statement that he lined up nails in the ground with the nail holes in the wood boards he reconstructed, *id.* at 36-38, but that he does not have evidence that Jenkinson removed evidence from the scene, planted evidence at the scene, and when asked whether he had "any evidence that Jenkinson fabricated evidence," Filas stated "[n]ot that I'm aware of." (*Id.* at 49.)

While Plaintiff has brought forth facts creating a question as to whether the proper procedures were followed during the investigation, Plaintiff has brought forth no evidence that Jenkinson deliberately fabricated evidence, and failed to disclose to the prosecutor that he had done so. Accordingly, this claim has no merit.

### b. The Rood Information

Plaintiff also alleges that a reasonable jury could find that at the meeting between Rood, Jenkinson, and Taylor, Rood told Jenkinson that the thimble hole was open and that Rood had photographs showing this. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 21, ECF No. 71.) While Plaintiff has presented evidence to create an issue of fact as to whether Rood and Taylor were aware of Jenkinson's board reconstruction, Plaintiff has not shown that Rood told Jenkinson that the thimble hole was not covered by wood. Rood was asked about this directly:

> Q: Has it ever come up between you and Mr. Jenkinson about whether or not his wood positioning was correct?

> A: No.
>
> Q: Who have you told, besides Mr. Marquardt, that Jenkinson's wood positioning is not right? . . . .
>
> A: Nobody.
>
> Q: You never told Trent Taylor that?
>
> A: No.

(Rood Dep. at 67, ECF No. 108-1.) While Jenkinson stated that he probably discussed his board reconstruction with Rood and Taylor, he was also asked directly whether Rood told him that his board reconstruction was incorrect:

> Q: It would have stuck out in your mind if Sergeant Rood had said, hey, pal, there was no piece of wood over that thimble hole, and where you think the boards are isn't where the boards were. That would have stuck out in your mind, wouldn't it?
>
> A: I–I–I certainly would think it would, yes.
>
> Q: Because that would have gone completely contradictory to what your position was about the boards and how they helped you rule out the thimble hole fire, fair?
>
> A: It could be, yes.

(Jenkinson Dep. at 165-66, ECF No. 119-1.)

Even assuming that Jenkinson's board reconstruction was incorrect, because Plaintiff has brought forth no evidence showing that, prior to trial, Jenkinson fabricated evidence or was aware that he conducted a faulty investigation, Plaintiff has failed to prove that Jenkinson failed to disclose evidence to the prosecutor when its exculpatory value was

apparent to him. Accordingly, Defendant Jenkinson is entitled to qualified immunity and Plaintiff's *Brady* claims against him do not survive summary judgment.

## IV. Malicious Prosecution

Plaintiff alleges that Defendants Jenkinson and Taylor both engaged in malicious prosecution. Jenkinson and Taylor both have raised the qualified immunity defense as to this claim. (ECF No. 66, PageID # 1348; ECF No. 65, PageID #540.) Therefore, Plaintiff bears the burden of showing Jenkinson and Taylor are not entitled to qualified immunity under the framework stated above.

A valid claim for malicious prosecution requires a Plaintiff to allege facts showing: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). The Sixth Circuit has noted that, while malice is not required, a defendant's participation in the prosecution must be "deliberate–i.e., given with knowledge of, or reckless disregard for, its falsity. 'Allegations of negligence or innocent mistake are insufficient.'" *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (citations omitted). "A 'reckless disregard for the truth' is demonstrated by showing that the officers . . . had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would

negate probable cause." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).

Here, there is no dispute that as a consequence of Plaintiff's criminal trial and jail sentence, Plaintiff suffered a deprivation of liberty. Further, the criminal proceeding was resolved in Plaintiff's favor when the charges were eventually dismissed. The two elements at issue are whether Defendants Taylor and Jenkinson "made, influenced, or participated in the decision to prosecute" and whether there was probable cause for the prosecution.

## A. Defendant Jenkinson

Plaintiff argues that Defendant Jenkinson engaged in malicious prosecution when he supplied false information and omitted information regarding his origin and cause finding, and that this was material to a finding of probable cause. As stated, looking at the facts in the light most favorable to Plaintiff, Plaintiff has shown, at most, that Jenkinson conducted a faulty investigation. The Sixth Circuit has indicated that a faulty investigation does not rise to the level of a malicious prosecution claim. *See Johnson*, 790 F.3d at 656 (noting that an allegation implying defendant "failed to conduct a proper investigation amounts to no more than a charge of negligence or innocent mistake, not the sort of 'deliberate or reckless falsehood' or otherwise blameworthy conduct required to make out a valid malicious prosecution claim.") (citing *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)). Because no constitutional violation has been shown, Jenkinson is entitled to qualified immunity on this claim.

## B. Defendant Taylor

Plaintiff contends that Defendant Taylor engaged in malicious prosecution when he requested an arrest warrant, and that his request was material to a finding of probable cause. (*Id.* at ¶ 62 (B).) Specifically, Plaintiff argues that "Taylor's material omission about Jenkinson's incorrect board reconstruction, which he learned of at the March 18, 2008, meeting with Jenkinson . . . affected the judge's decision to find probable cause to continue the case, as it left Jenkinson's opinion undisputed." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 16, ECF No. 106.)

### 1. Probable Cause

"A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson*, 790 F.3d at 655. In a claim of malicious prosecution, the Court must consider whether Defendants had probable cause to arrest Plaintiff and whether probable cause existed to initiate the criminal proceeding against Plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 310-11 (6th Cir. 2010). Probable cause exists if the "facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

In *Sykes*, while addressing an unlawful arrest claim, the Sixth Circuit stated that if a warrant "affidavit contains false statements or material omissions, we set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." 625 F.3d at 305. Taylor argues that "even without Jenkinson and Raad's cause and origin analysis regarding the thimble hole, the record is replete with evidence that Plaintiff committed the crime." (Defs.'Mot. Summ. J. at 23, ECF No. 66.) This evidence includes the fact that the police received tips from Plaintiff's girlfriend's relatives that Plaintiff bragged he knew how to start a fire and get away with it, that Plaintiff had made inconsistent  statements to the police about when he last loaded the wood stove, that Plaintiff and his girlfriend had been in a serious fight hours before the fire occurred, that Jenkinson believed a torch was used on the basement floor joists, and more. (*Id.*)

Looking at the evidence in the light most favorable to Plaintiff, however, when Taylor requested the arrest warrant, he omitted information that Jenkinson incorrectly reconstructed the boards surrounding the chimney, causing Jenkinson to erroneously eliminate the thimble hole as the origin of the fire. Jenkinson himself testified that if the thimble hole could not be conclusively ruled out as the origin of the fire, then the fire would have to be classified as "undetermined" rather than "incendiary." (Jenkinson Dep. at 241.) Had the arrest warrant contained this information indicating that the cause of the fire should have been classified as undetermined rather than incendiary, a reasonable jury could find that probable cause does not exist showing that Plaintiff committed arson. Taylor's omission of information that he

knew would negate probable cause showed a reckless disregard for the truth. *See Beauchamp*, 320 F.3d at 743.

### 2. Influence and Participation in the Decision to Prosecute

Defendant Taylor argues that he did not make, influence, or participate in the decision to charge Plaintiff. Plaintiff asserts that Taylor's omissions regarding what he knew about Jenkinson's "incorrect board reconstruction clearly helped influence [the prosecutor's] decision to initiate the prosecution."

To show that a police officer's "falsehoods, misrepresentations, and omissions" influenced the commencement of criminal proceedings, Plaintiff must show that the "misstatements and falsehoods in [the officer's] investigatory materials extended beyond [his] initial arrest and ultimately influenced [his] continued detention." *Sykes v. Anderson*, 625 F.3d 294, 316 (6th Cir. 2010). This influence may be based on the officer's "'knowing misstatements . . . to the prosecutor" or his "'pressure or influence' over an individual who either made the decision to prosecute or testified at the preliminary hearing." *Id.* (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids the decision, as opposed to passively or neutrally participating." *Id.* at 308 n. 5. However, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id.* at 313–14.

Here, there is evidence that Taylor influenced or participated in the decision to prosecute. The Wexford County Prosecutor, Julie Valice, testified that she had several meetings with Taylor where they discussed the case, and that Taylor helped her to understand the case. (Valice Dep. at 21-22, ECF No. 92-1.) Valice was asked about the extent of Taylor's involvement:

> Q: Okay. But Trent Taylor actually was with you and personally went over the case with you before it was charged?
>
> A: Yes; yes.
>
> Q: So would it be fair to say that to some degree Trent Taylor also influenced your decision to charge?
>
> A: Yes.

(*Id.* at 26.) Taking the facts in the light most favorable to Plaintiff, Taylor did more than simply turn over his truthful materials. During his several meetings with Valice, Taylor failed to disclose evidence that he knew contradicted Jenkinson's finding of arson. Valice testified that Taylor, as the officer in charge, is the person she primarily relied on to help her. (*Id.* at 59-60.)

Accordingly, looking at the facts in the light most favorable to Plaintiff, there is evidence from which a jury could find that Defendant Taylor violated Plaintiff's constitutional right to be free from malicious prosecution.

### 3. Clearly Established Constitutional Right

To show that Taylor is not entitled to qualified immunity, Plaintiff must also show that the constitutional right to be free from malicious prosecution was clearly established at the

time of the offense. The Sixth Circuit has found that the right to be free from malicious prosecution was a right clearly established as early as 1996. *See Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (citing *Smith v. Williams*, No. 94-6306, 1996 WL 99329 (6th Cir. 1996)). "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015)  (quoting *Newman*, 773 F.3d at 772).

Here, Plaintiff has set forth sufficient evidence to create a genuine issue of fact as to whether Taylor acted with a reckless disregard for the truth when he omitted information that Jenkinson's board reconstruction was incorrect, and whether this resulted in Plaintiff's arrest and prosecution without probable cause. Because this right to be free from malicious prosecution was clearly established when the actions occurred in 2008, Taylor is not entitled to qualified immunity on this claim.

### V. Failure to Train

Lastly, Plaintiff asserts that the County of Wexford's failure to train police detectives in the fundamental requirements of *Brady* demonstrated "deliberate indifference" to the constitutional rights of its citizens. (First Am. Compl. ¶ 62(F), ECF No. 40; Defs.' Resp. to Pl.'s Mot. Summ. J. at 18, ECF No. 106.)

Defendants argue that this claim has no merit for several reasons. First, Defendants argue, Rood and Taylor did not commit a constitutional violation and, accordingly, the County cannot be held liable. For the reasons stated above, a question of fact exists as to

whether Rood and Taylor are liable for *Brady* violations, and thus Defendants' claim has no merit.

Second, Defendants argue that even if Rood and Taylor were held liable, the County of Wexford is not vicariously liable for the constitutional torts of its employees. Defendants are correct that a municipality cannot be held liable on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 463 U.S. 658, 694 (1978); *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The Sixth Circuit has stated, however, that "there are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom," including "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Defendants mistakenly argue that Plaintiff must satisfy the four-factor test set forth in *Thomas* and in *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996), which applies when a claim is made that a "policy of tolerating federal rights violations is unwritten but nevertheless entrenched." Here, however, Plaintiff argues that "a policy of inadequate training or supervision" exists rather than a "custom of tolerance of acquiescence of federal rights violations." The Supreme Court has stated that:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming

be properly thought of as a city "policy or custom" that is actionable under §
1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89. "'Deliberate indifference is a stringent

standard of fault[.]'" *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of Comm'rs of Bryan Cnty.,*

*Okla. v. Brown*, 520 U.S. 397, 410 (1997)).

Typically, "[a] pattern of similar constitutional violations by untrained employees" is

necessary to show deliberate indifference under a failure to train claim. *Id.* However, "'in a

narrow range of circumstances,' a pattern of constitutional violations might not be necessary

to show deliberate indifference." *Connick*, 131 S. Ct. at 1361. In *Connick*, the Court indicated

that if policymakers fail to give police officers necessary legal training when they would

otherwise not be familiar with the legal concepts, deliberate indifference can be shown

despite a pattern of similar constitutional violations. *Id.*  For instance, in *City of Canton*, "the

Court theorized that a city's decision not to train officers about constitutional limits on the

use of deadly force could reflect the city's deliberate indifference to the 'highly predictable

consequence,' namely, violations of constitutional rights." *Id.*

While Defendants argue that periodic *Brady* training–distinguishable from training

on the use of deadly force–is not necessary because the law has not changed, the Sixth

Circuit has noted the "very specific obligations of police officers on the disclosure of

exculpatory materials" set forth by the Supreme Court in *Brady*, and stated that "evidence

of failure to train on the proper handling of exculpatory materials has the 'highly predictable

consequence' of constitutional violations." *Gregory v. City of Louisville*, 444 F.3d 725, 753, 754 (6th Cir. 2006).

Here, Trent Taylor could not identify "one instance of training or legal updates" regarding his *Brady* obligations since he graduated college in 1991. (Taylor Dep. at 23.) Similarly, Plaintiff has brought forward testimony from Richard Denison, who served with the Wexford County Sheriff's Department for 23 years. Denison was asked whether he ever received any training on *Brady*:

> A:    We have not had a specific target training on that topic in Wexford County.
>
> ****
>
> Q:    And the – the contours of your obligation as a police officer to turn [exculpatory and impeachment evidence] over to the prosecutor you've never had any type of training on that; fair?
>
> A:    As an employee of the Wexford County Sheriff's Office, no.

(Denison Dep. at 13-14, ECF No. 130-1.)

The Sixth Circuit has held that, despite a pattern of constitutional violations, "evidence pointing to a City's failure to provide *any* training on key duties with direct impact on the constitutional rights of citizens is sufficient to survive summary judgment with a *Monell* failure to train claim." *Gregory*, 444 F.3d at 754 (citation omitted) (emphasis in original). Accordingly, Plaintiff has brought forth sufficient evidence to survive summary judgment on this claim.

## VI.

For the reasons stated above, Defendant Jenkinson's motion for summary judgment will be granted. The remaining Defendants' motion for summary judgment will be denied.

An order will enter consistent with this Opinion.


Dated: <u>October 27, 2015</u>                    <u>/s/ Robert Holmes Bell</u>
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE